**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**



CHARLES L. NAIL, JR.
BANKRUPTCY JUDGE

---

FEDERAL BUILDING AND UNITED STATES POST OFFICE
225 SOUTH PIERRE STREET, ROOM 211
PIERRE, SOUTH DAKOTA 57501-2463

TELEPHONE: (605) 945-4490
FAX: (605) 945-4491

January 20, 2009

Brian L. Utzman, Esq.
Counsel for Debtors
Post Office Box 899
Rapid City, South Dakota  57709-0899

Dean O'Neill
Post Office Box 32
Cody, Nebraska  69211-0032

      Subject:    ***In re Robert R. and Janet M. Ninas***
               Chapter 13; Bankr. No. 05-50342

Dear Mr. Utzman and Mr. O'Neill:

      The matter before the Court is Debtors' Motion for Reconsideration (doc. 48) of the Court's Order Directing Clerk of Court to Discharge Judgments Voided in Bankruptcy and Denying Debtors' Motion in Part (doc. 44). This is a core proceeding under 28 U.S.C. § 157(b)(2). This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c). As set forth below, the Court's order will be amended only to better describe the nature of Dean O'Neill's pre-petition claim and to preserve Debtors' right to commence an appropriate adversary proceeding to determine whether that claim has been discharged.

      **Summary of material facts**. Robert R. Ninas and Janet M. Ninas ("Debtors") filed a chapter 13 petition. Debtors scheduled Dean O'Neill ("O'Neill") as an unsecured creditor holding an $11,243 claim against only Debtor Robert Ninas. They stated the underlying debt was incurred February 25, 2003 and had been reduced to a judgment. They did not indicate O'Neill's claim was contingent, unliquidated, or disputed. O'Neill and his attorney, Paul E. Jensen, were timely served with the notice of commencement of chapter 13 case, Debtors' proposed plan, and Debtors' proposed modified plan.

      On schedule A, Debtors listed a homestead valued at $42,965 and three additional parcels of real property valued at $3,200, $8,000, and $4,000,

In re Ninas
January 20, 2009
Page 2

respectively.  Debtors described their interest in the homestead as "Fee Owner" and
indicated they held that interest jointly.  They described their interest in the first of the
three additional parcels as "Co-Owner" and indicated they also held that interest
jointly.  They described their interest in the other two additional parcels as "Co-
Owner" and indicated only Debtor Janet Ninas held that interest.    In notes
accompanying the descriptions of the three additional parcels, Debtors stated each of
them was farm land in which Debtor Janet Ninas held an undivided quarter interest
and her mother retained a life estate.[1]

Debtors amended their schedule A to increase the value of the homestead to
$78,000 and decrease the values of the three additional parcels to $2,000, $4,000,
and $2,000, respectively (doc. 12).  Debtors offered no explanation for any of these
notable changes in values.  Debtors also amended their schedule C to decrease their
claimed homestead exemption from $30,000 to $24,098.39 (doc. 12).

Debtors' original plan (doc. 6), their modified plan (doc. 15), and their plan as
confirmed (doc. 18) did not acknowledge, identify, or provide for any secured claims
other those held by Black Hills Federal Credit Union and GMAC Mortgage Corporation.
They did not acknowledge, identify, or provide for any judgment liens.  With respect
to unsecured claims, Debtors' original plan provided:

> After making the payments to administrative claims, priority claims and
> secured creditors described above, the Trustee will distribute the balance
> of the payments made by the Debtors to the holders of timely-filed
> unsecured and under secured claims.  If all unsecured and under secured
> creditors known to Debtors timely file proofs of claim, each unsecured
> creditor will be paid 13.1% of their claims.

Debtors' modified plan and plan as confirmed included the same provision, with only
the anticipated payout (11.7%) changing.  None of the three iterations of Debtors'
plan stated what would happen to claims held by unsecured or undersecured creditors
who did not timely file proofs of claim.

O'Neill did not file a proof of claim or an objection to confirmation of Debtors'
original plan or their modified plan.  He did not appeal the order confirming Debtors'

---

[1] This seems to contradict Debtors' indication that they held a joint interest in
the first of the three additional parcels.

In re Ninas
January 20, 2009
Page 3

plan and the attendant plan as confirmed.

Two and a half years later, Trustee Dale A. Wein gave notice to creditors and other parties in interest, including O'Neill and his attorney, that Debtors had completed their plan payments (doc. 27). O'Neill filed a *pro se* objection saying he had not been paid (doc. 29), but did not appear in support of his objection. At the hearing, the Court concluded Debtors had completed their plan payments and overruled O'Neill's objection. However, the Court also indicated the question of whether O'Neill's claim had been discharged might need to be determined through an appropriate adversary proceeding to determine dischargeability.

Debtors then filed two motions: one under S.D.C.L. § 15-16-20 for an order declaring Debtors' *in personam* liability on the two judgments held by O'Neill (for a total of $9,814.58), a judgment held by Ford Motor Company (for $5,166.32), and a judgment held by Black Hills Collection Service, Inc. (for $263.42) discharged in bankruptcy and directing the state court clerks of court to update their records accordingly (doc. 38);[2] and the other under 11 U.S.C. § 522(f) for an order avoiding the judgment liens against their homestead that resulted from each of those judgments (doc. 39). The Court granted Debtors' motion to avoid liens, because after subtracting Debtors' allowable homestead exemption and other encumbrances, there was no equity in Debtors' homestead to support any of the judgment liens (doc. 43).[3]

The Court granted Debtors' motion to discharge judgments as to the judgments held by Ford Motor Credit Company and Black Hills Collection Service, Inc. and denied it as to the two judgments held by O'Neill (doc. 44). Ford Motor Credit Company and Black Hills Collection Service, Inc. had each filed a proof of claim for an unsecured claim, and their claims had been partially paid through the plan. O'Neill had not filed a proof of claim, and Debtors had not filed a proof of claim on his behalf under

_____

[2]    The procedure set forth in S.D.C.L. § 15-16-20 appears to be unique to the practice of bankruptcy law in the District of South Dakota. To the undersigned's knowledge, neither the efficacy nor the constitutionality of this state statute, which purports to give the bankruptcy court jurisdiction over state court "housekeeping" matters, has ever been challenged.

[3]    Though it would not have changed the result, Debtors' motion to avoid liens failed to reflect the $78,000 value they assigned to their homestead in their amendment to schedule A (doc. 12).

*In re Ninas*
January 20, 2009
Page 4

Fed.R.Bankr.P. 3003. Debtors' plan did not reflect the Court's prior holdings that a plan should specifically state what would happen to the claims of unsecured creditors who failed to timely file a proof of claim, *see Folk v. Hauge Associates (In re Steven L. Folk)*, Bankr. No. 01-40111, Adv. No. 05-4081, slip op. at 4 (Bankr. D.S.D. Nov. 15, 2005) (unsecured claim of creditor who had notice of the case but did not file a proof of claim was not declared discharged through a default judgment when the creditor did not file a proof of claim and when the debtor's chapter 13 plan did not address what would happen to claims for which no proof was timely filed), and *In re Duane D. Rogers*, Bankr. No. 99-10071, slip op. at 2 (Bankr. D.S.D. Aug. 30, 2004) (claim held by unsecured creditor who did not file a proof of claim was not discharged when the chapter 12 plan provided treatment only for claims that had been filed and allowed but did not specifically provide for treatment for unfiled claims). Debtors' plan also did not include the language below that was provided in the sample plan at Appendix 22 of the Local Rules of Bankruptcy Procedure (effective August 1, 2005):

> Any unsecured creditor who receives appropriate notice of the case but fails to timely file a proof of claim will be discharged to the extent set forth in 11 U.S.C. § 1328(a) when Debtor completes all plan payments.

Based on that record, the Court stated in its order "O'Neill's claims were not provided for by Debtors' plan inasmuch as the plan did not provide for the discharge of unsecured claims of creditors who had timely notice of the case but failed to timely file a proof of claim and . . . a claim and any attendant judgment must be provided for in the plan or be disallowed to be discharged under 11 U.S.C. §§ 1328(a) and 524(a)[.]"

Debtors filed a motion for reconsideration (doc. 48). They argued O'Neill's unfiled claim was a "disallowed claim" pursuant to 11 U.S.C. § 502(b)(9) and thus discharged under § 1328(a). They also argued even a person of limited intelligence would understand a claim held by an unsecured creditor who did not timely file a proof of claim would be discharged under Debtors' plan even if the plan did not specifically

*In re Ninas*
January 20, 2009
Page 5

so state.[4]  They cited three cases, only one of which was factually similar.[5]  The Court

_____

[4]    Debtors' attorney used a cartoon character to describe such a person.  The Court trusts he will not use any similarly flippant and inappropriate analogies in the future.

[5]    Debtors cited *In re Johnson*, 156 B.R. 557 (Bankr. N.D. Ill. 1993), in support of the statement: "Untimely claims are disallowed under 11 [U.S.C.] § 502(b)(9)."  In *Johnson*, a creditor had actually filed an untimely proof of claim and the court sustained the trustee's objection to the claim on that basis, relying principally on Fed.R.Bankr.P. 3002(c).  In this case, O'Neill did not file a proof of claim, timely or untimely.   Further,  though Debtors referenced *Johnson* in support of their interpretation of § 502(b)(9), that subsection was not added to § 502(b) until 1994, the year following the *Johnson* decision.

Debtors cited *In re Hamilton*, 179 B.R. 749 (Bankr. S.D. Ga. 1995), in support of the statement: "[A] creditor who failed to file a proof of claim, or who did so untimely, is bound by the payment schedule provided in Debtor's plan and may pursue deficiency only if the debt was determined to be not dischargeable."  In that case, the debtor had timely filed a proof of claim on a creditor's behalf pursuant to 11 U.S.C. § 501(c) and Fed.R.Bankr.P. 3003.  The court denied the creditor's motion to be permitted to file a late proof of claim on its own behalf that would supersede the proof of claim filed by the debtor.  The court concluded the creditor, absent a subsequent nondischargeability decision, was bound by the proof of claim filed by the debtor and the plan treatment provided for that claim.  In this case, Debtors did not timely file a proof of claim for O'Neill after O'Neill failed to file his own proof of claim, so there is no "allowed" claim under § 502(a).

Debtors cited *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118 (9th Cir. 1983), for the proposition that "§ 1328(a) simply requires that for a claim to be dischargeable, a plan must provide for it, i.e., deal with it or refer to it" and for the further proposition that "unsecured creditors are provided for even in 'zero payment plans.'"  In *Gregory*, an order that summarized the debtor's plan was served on creditors.  [Apparently in that district, creditors were served with the order and a plan summary rather than a copy of the plan itself.]  The order stated, "The debtors' plan does not propose payment of unsecured creditors."   The plan itself provided, "5. General Unsecured Creditors.  This plan provides for -0- payment to unsecured creditors requesting that said debts be discharged."  A creditor holding a fraud-based

In re Ninas
January 20, 2009
Page 6

took the matter under advisement.

**Procedural law**.  Neither the Federal Rules of Bankruptcy Procedure nor the Federal Rules of Civil Procedure provide for a motion for reconsideration, *see Auto Services Co. v. KPMG, LLP,* 537 F.3d 853, 855 (8th Cir. 2008), and Debtors did not cite any procedural authority for their motion.  However, because Debtors filed their motion more than ten days after entry of the contested order, the Court will treat it as a motion to alter or amend under Fed.R.Bankr.P. 9024, which incorporates Fed.R.Civ.P. 60(b).  *See Trout v. Trout (In re Trout)*, 984 F.2d 977, 978 (8th Cir. 1993); *Sanders v. Clemco Industries*, 862 F.2d 161, 168-71 (8th Cir. 1988).  Debtors have not made any allegations that would seem to implicate subsections (b)(1), (b)(2), (b)(3), (b)(4), or (b)(5) of Rule 60.  Accordingly, the Court is left to consider the application of subsection (b)(6).

Under Rule 60(b)(6), a party may be relieved from a final judgment if exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress.  *Murphy v. Missouri Dept. of Corrections*, 506 F.3d 1111, 1117 (8th Cir. 2007)(citations and quotes therein); In re Guidant Corp. Implantable Defibrillators Products Liability Litigation, 496 F.3d 863, 868 (8th Cir. 2007).  Rule 60(b)(6) is designed to enable a court to accomplish justice after weighing the equities.  *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999) (citations therein).  Exceptional circumstances, however, "are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at."  *Atkinson v. Prudential Property Co., Inc.*, 43 F.3d 367, 373 (8th Cir. 1994).  Relief under Rule 60(b)(6) is an extraordinary remedy since it intrudes on the sanctity of a final judgment, *id*., and such

---

judgment did not object to this plan treatment before confirmation.  Two months later, that creditor filed a nondischargeability complaint.  The Court of Appeals held the judgment creditor's claim was "provided for by the plan" as required by § 1328(a), even if the provision was for "zero payment," and the treatment was binding because the creditor did not object to the plan or appeal the confirmation order.  Like the creditor in that case, O'Neill did not object to the plan or appeal the order confirming it in this case.  The plan in *Gregory*, however, dealt with all "unsecured creditors."  The plan in this case dealt with "the holders of *timely-filed* unsecured and under secured claims [emphasis added]" and did not address unsecured creditors who did not file proofs of claim, timely or otherwise.

In re Ninas
January 20, 2009
Page 7

a motion cannot be used to remedy a failure to take a timely appeal absent
extraordinary circumstances. *Chambers v. Armontrout*, 16 F.3d 257, 261 (8th Cir.
1994).  As with a motion under any other subsection of Rule 60(b), a motion under
Rule 60(b)(6) is also not a vehicle for re-argument on the merits. *Broadway v. Norris*,
193 F.3d 987, 990 (8th Cir. 1999).

**Discussion**.  As discussed below, Debtors' motion under Rule 60(b)(6) will be
denied because Debtors have not shown exceptional circumstances denying them a
full and fair opportunity to litigate the dischargeability of O'Neill's claim and preventing
them from receiving adequate redress.

Initially, the Court notes § 502(b)(9) does not turn an unfiled claim into a
disallowed claim, as Debtors urge the Court to conclude.  Instead, it addresses claims
that are filed, but filed tardily.

> [Section] 502(b)(9) and Rule 3002(c) operate as a "strict statute of
> limitations. "*SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205
> B.R. 967, 970 (Bankr. M.D. Ala.1995).  Bankruptcy courts are therefore
> without the authority to extend the Rule 3002(c) deadline and allow an
> untimely <u>filed</u> proof of claim over an objection in a Chapter 13 case,
> except for the reasons set forth in Rule 3002(c)(1)-(5).  *In re Zich*, 291
> B.R. 883, 885 (Bankr. M.D. Ga.2003); *In re McLarry*, 273 B.R. 753, 754
> (Bankr. S.D. Tex.2002); *Windom*, 284 B.R. at 646.

*In re Griggs*, 306 B.R. 660, 664 (Bankr. W.D. Mo. 2004) (emphasis added).  In other
words, § 502(b)(9) requires a debtor or a trustee to take positive action – file an
objection to claim – if it wants the court to disallow an untimely filed claim.  *In re
Nwonwu*, 362 B.R. 705, 710 (Bankr. E.D. Va. 2007); and *Hauge v. Skaar (In re
Hauge)*, 232 B.R. 141, 148 n.9 (Bankr. D. Minn. 1999)(citations therein).  In this case,
O'Neill did not file an untimely claim to which Debtors objected under § 502(b)(9).
Thus, § 502(b)(9) does not apply or render O'Neill's claim disallowed.

Second, Debtors have already had opportunities to litigate the nature of O'Neill's
claim.  Though O'Neill did not file a proof of claim, Debtors could have, and perhaps
should have, but did not, file a proof of claim on O'Neill's behalf under 11 U.S.C.

§501(c) and Fed.R.Bankr.P. 3004.[6]  Had they timely done so, O'Neill would have been forced to litigate the matter if he disagreed with the value or the nature of the claim (secured or unsecured) ascribed by Debtors.  *See In re Hydorn*, 94 B.R. 608, 612 (Bankr. W.D. Mo. 1988).  Debtors also did not initiate a contested matter to determine whether some or all of O'Neill's two judgment liens were void under 11 U.S.C. § 506(d).[7]  *Harmon v. United States*, 101 F.3d 574, 581-82 (8th Cir. 1996) (discussing application of § 506(d)(2)) (citations therein).

---

[6]    At least to the extent his claim may have been secured, Fed.R.Bankr.P. 3002(a) did not specifically require O'Neill to file a proof of claim.  The bankruptcy code and federal rules are at best gray regarding the need to file a proof of claim for a secured or partially secured claim in a chapter 13 case.  *See, e.g., Dixon v. I.R.S. (In re Dixon)*, 218 B.R. 150, 154  (B.A.P. 10th Cir. 1998)(conceding no code provision expressly provides unfiled claims are discharged by a chapter 13 discharge); *In re Hill*, 286 B.R. 612, 616 and 616 n.3 (Bankr. E.D. Pa. 2002)(other cases cited therein) (discussion of federal rules regarding the necessity of filing proofs of different types of claims in chapter 13 cases and the deadlines for doing so).  However, under Fed.R.Bankr.P. 3021, a chapter 13 trustee may only make payments on allowed claims, which would ordinarily require the filing of proofs of claim by creditors or by the debtor on behalf of creditors.  *Walters v. Sherwood Municipal Court (In re Walters)*, 219 B.R. 520, 523 n.1 (Bankr. W.D. Ark. 1998); *In re Reichenbach*, 2004 WL 1718090, Bankr. No. 03-03148, slip op. at 2  (Bankr. N.D. Iowa 2004); and 11 U.S.C. § 502(a).  Following the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Official Form Notice of Commencement for a Chapter 13 (Official Form 9I) was amended to better advise creditors regarding the necessity and effect of filing a proof of claim.  The notice of commencement of case O'Neill received in this case, however, complied with the pre-BAPCPA official form and advised him, somewhat inconsistently, he "might" not be paid if he did not file a proof of claim and he "must" file a proof of claim to be paid.

[7]    The Court is satisfied a determination under § 506(a) and § 506(d) may be sought through a contested matter rather than an adversary proceeding, provided the nature, validity, or extent of a lien are not also at issue.  *See Harmon*, 101 F.3d at 585, and *In re Bennett*, 312 B.R. 843, 846-49 (Bankr. W.D. Ky. 2004)(discussion of appropriate procedure for "lien stripping" in a chapter 13 case and citation of decisions addressing the issue); *compare Laskin v. First Nat. Bank of Keystone (In re Laskin)*, 222 B.R. 872, 874 (B.A.P. 9th Cir. 1998) (§ 506(d) determination arguably should be sought through an adversary proceeding).

*In re Ninas*
January 20, 2009
Page 9

> If debtors wish to avoid a lien as being without value they must take affirmative steps to bring that issue before the Court, and must prove that there is no equity to support such lien.

*In re Roger Lee Oletzke and Delores Annette Oletzke*, Bankr. No. 86-10254. slip op. at 4 (Bankr. D.S.D. July 28, 2005) (quoting *JaKS Farm Custom Forage Harvesting, L.L.C. v. Anderson (In re Anderson)*, 305 B.R. 861, 867 (B.A.P. 8th Cir. 2004)). Further, Debtors' plan did not address O'Neill's possible secured claim or provide plan treatment for any judgments and attendant judgment liens.  In this circuit,

> [w]here a debtor's plan does not expressly preserve a secured creditor's lien, the confirmation of a plan acts to extinguish the lien <u>provided that</u>: 1) the lienholder participated in the debtor's bankruptcy case by filing a proof of claim; and 2) the property was either "dealt with" or "provided for" by the plan.

*Oletzke*, Bankr. No. 86-10254. slip op. at 5-6 (quoting *In re Siemers*, 205 B.R. 583, 585 (Bankr. D. Minn. 1997)(emphasis in the original) (citing Harmon, 101 F.3d at 581-82, and *FDIC v. Union Entities (In re Be-Mac Transport. Co.*, 83 F.3d 1020, 1027 (8th Cir. 1996)).  *See also Folk*, Bankr. No. 01-40111, Adv. No. 05-4081, slip op. at 3 (only secured claims dealt with by plan were discharged).  This case law is longstanding, despite changes in the nation's bankruptcy statutes over the years. *See, e.g., Cottrell v. Pierson*, 12 F. 805, 805-06 (8th Cir. 1881).  However, Debtors did not take any of these affirmative steps in a timely fashion, and at least to the extent O'Neill's claim may have been secured by judgment liens that were not provided for in the plan, the judgment liens remain on any nonexempt real property owned by Debtor Robert Ninas on the petition date.

Third, relief for Debtors under Rule 60(b)(6) is also not warranted because they may still file an adversary proceeding seeking a determination of whether O'Neill's pre-petition claim is discharged, and if so, to what extent.  In any such adversary, Debtors will face equitable hurdles because of their failure to specifically address O'Neill's judgments and judgment liens in a more timely manner as required by the bankruptcy code and federal rules discussed above.  Debtors will also face legal hurdles in convincing the Court to modify *Folk,* Bankr. No. 01-40111, Adv. No. 05-4081, slip op. at 4, and *Rogers*, Bankr. No. 99-10071, slip op. at 2.  *See also Hairopoulos v. United States*, 193 B.R. 889, 892 (Bankr. E.D. Mo. 1996)(debt omitted from a chapter 13 plan is not "provided for" by the plan where the plan did not deal with it or refer to it), *aff'd*, 118 F.3d 1240 (8th Cir. 1997); *In re Scott*, 119 B.R. 818, 818-19 (Bankr. M.D.

*In re Ninas*
January 20, 2009
Page 10

Ala. 1990)(deficiency claim on unscheduled mortgage not discharged where the claim was not disallowed and the plan did not provide for it); *but see In re Lowthorp*, 325 B.R. 470 (Bankr. M.D. Fla. 2005) (unfiled tax claim was discharged even when the plan did not make reference to the debt).   Despite these hurdles, however, a nondischargeability action is still an option for them.

Certainly, Debtors might prefer the Court resolve all these issues under their present motion to reconsider and the underlying motion to discharge judgments, but neither is sufficiently broad to encompass all of the unresolved issues.  First, a motion to discharge judgments under S.D.C.L. § 15-16-20 addresses only a debtor's *in personam* liability on a debt, not the validity of any judgment lien.  Such a motion does not implicate the interrelated bankruptcy code sections and federal rules regarding partially secured claims in a chapter 13 case.   Second, the record is incomplete regarding the value of Debtors' nonexempt real property and Debtor Robert Ninas' interest in that real property.[8]  Finally, Debtors' case is near its end, not its beginning, when O'Neill could have better exercised his options depending on whether the Court determines he holds a fully secured, partially secured, or wholly unsecured claim.  For these reasons, whether O'Neill's pre-petition claim is discharged in whole or in part is better addressed through an adversary proceeding under 11 U.S.C. § 7001(6).  If Debtors bring such an adversary proceeding, the Court cautions Mr. O'Neill that he must answer the complaint within the time allowed to avoid a default judgment in Debtors' favor.

The Court will, however, correct the subject order *sua sponte* under Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(a).  To the extent the Court overlooked inconsistent provisions in the record and merely assumed O'Neill held a wholly unsecured claim, the order granting in part and denying in part Debtors' motion to discharge judgments (doc. 44) was in error.  O'Neill held two pre-petition judgments, apparently against only Debtor Robert Ninas.[9]   State law, S.D.C.L. § 15-16-7, gave

---

[8]   It is also unknown whether Debtor Janet Ninas' mother is still living and thus still holds a life estate in the three additional parcels.  The Court takes no position herein regarding the effect of that life estate on the attachment of any judgment liens for a judgment against Debtor Robert Ninas, especially when it is unknown whether Debtor Janet Ninas' remainder interest was vested or contingent.

[9]   Debtors' schedule E indicates O'Neill holds a single judgment against Debtor Robert Ninas.  Debtors' motion to discharge judgments indicated there were

*In re Ninas*
January 20, 2009
Page 11


O'Neill judgment liens on any nonexempt real property Debtor Robert Ninas may have owned.  In their schedules, Debtors indicated Debtor Robert Ninas had an interest in one of the three additional parcels.  O'Neill's judgment liens may have attached to that property.  Accordingly, the Order Directing Clerk of Court to Discharge Judgments Voided in Bankruptcy and Denying Debtors' Motion in Part (doc. 44) needs to be amended to reflect the possible secured nature of O'Neill's claim and to eliminate any suggestion Debtors are foreclosed from filing an appropriate adversary proceeding to determine whether O'Neill's claim has in fact been discharged.

The Court will enter an Amended Order Directing Clerk of Court to Discharge Judgments Voided in Bankruptcy and Denying Debtors' Motion in Part as described above.

Sincerely,

Charles L. Nail, Jr.
Bankruptcy Judge


CLN:sh

cc:    case file (docket original; serve parties in interest)

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

**NOTICE OF ENTRY**
**Under Fed.R.Bankr.P. 9022(a)**

**This order/judgment was entered on the date shown above.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**

---

two judgments, but it did not indicate whether the judgments were against one or both debtors.  If the judgments are only against Debtor Robert Ninas, the judgment liens would not attach to nonexempt real property in which only Debtor Janet Ninas held an interest.